UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES FOR THE MASON TENDERS DISTRICT COUNCIL WELFARE FUND, PENSION FUND, ANNUITY FUND, AND TRAINING PROGRAM FUND; MICHAEL PROHAKA; and ANNA GUTSIN,<br><br>                                   Petitioners,<br><br>                    -v.-<br><br>IDEAL INTERIORS, INC.,<br><br>                                   Respondent. | 23 Civ. 5110 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

The Trustees for The Mason Tenders District Council Welfare Fund,
Pension Fund, Annuity Fund, and Training Program Fund (the "Funds"), along
with individuals Michael Prohaka and Anna Gutsin (together with the Funds,
"Petitioners"), filed this motion for summary judgment in support of their
petition to confirm an arbitral award (the "Award"). The Court has jurisdiction
to confirm the Award pursuant to Section 301 of the Labor Management
Relations Act of 1947, Pub. L. No. 80-101, 61 Stat. 136 (the "LMRA"), 29 U.S.C.
§ 185. The motion is unopposed, inasmuch as Respondent Ideal Interiors, Inc.
("Respondent") has neither acknowledged the petition nor made any effort to
contest confirmation of the Award. For the reasons set forth in the remainder
of this Opinion, the Court grants Petitioners' motion.

**BACKGROUND**[1]

**A.    Factual Background**

Petitioners in this case are the Trustees for The Mason Tenders District
Council Welfare Fund, Pension Fund, Annuity Fund, and Training Program
Fund.  (Pet. 56.1 ¶ 1).  Each of the Funds is an "employee benefit plan" as
defined in Section 3(3) of the Employee Retirement Income Security Act of
1974, Pub. L. 93-406,  88 Stat. 829 ("ERISA"), 29 U.S.C. § 1002(3), as well as a
"multiemployer plan" within the meaning of Section 3(37)(A) of ERISA, *id.*
§ 1002(37)(A), and is established and maintained pursuant to an agreement
called an Amended and Restated Agreement and Declaration of Trust (the
"Trust Agreements").  (*Id.*).  The Funds' purpose is to provide fringe benefits to
eligible employees in the construction industry whose employers contribute to
the Funds pursuant to collective bargaining agreements.  (*Id.*).  The Funds are
jointly administered by a Board of Trustees, which Board consists of union and

---

[1]    The facts set forth in this Opinion are drawn from Petitioners' submissions in
connection with their motion for summary judgment.  The Court primarily sources facts
from Petitioners' Local Rule 56.1 Statement ("Pet. 56.1" (Dkt. #11)); the Declaration of
Haluk Savci, Esq. ("Savci Decl." (Dkt. #8)), and the exhibits attached thereto; as well as
Petitioners' Memorandum of Law in support of their motion ("Pet. Br." (Dkt. #10)).

Citations to Petitioners' Rule 56.1 Statement incorporate by reference the documents
and testimony cited therein.  Where a fact stated in the Rule 56.1 Statement is
supported by evidence, the Court finds that fact to be true.  *See* Local Civil Rule
56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the
statement required to be served by the moving party will be deemed to be admitted for
purposes of the motion unless specifically controverted by a correspondingly numbered
paragraph in the statement required to be submitted by the opposing party."); *id.* at
56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b),
including each statement controverting any statement of material fact, must be followed
by citation to evidence which would be admissible, set forth as required by Fed. R. Civ.
P. 56(c).").

employer representatives pursuant to the requirements of Section 302(c)(5) of the LMRA, § 186(c)(5).  (*Id.*).

Petitioners also include Anna Gutsin, the administrator of the Funds, and Michael Prohaka, the Business Manager of the Mason Tenders District Council of Greater New York and Long Island (the "Union").  (Pet. 56.1 ¶¶ 2-4). The Union is a labor organization within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185, and represents employers in an industry affecting commerce as defined in Section 501 of the LMRA, *id.* § 142, and Section 3(12) of ERISA, *id.* § 1002(12).  (*Id.* ¶ 3).  Petitioner Prohaka brings this action in his representative capacity, on behalf of the Union, for dues and contributions pursuant to Section 12 of the General Associations Law of the State of New York, N.Y. GEN. ASS'NS LAW § 12 (McKinney 2023).  (*Id.* ¶ 4).

Respondent Ideal Interiors, Inc. is a construction contractor.  (Pet. 56.1 ¶ 5).  Respondent is bound by the terms of the Union's Independent Collective Bargaining Agreement (the "CBA") (*id.*), which further states that all signatory contractors are bound by the terms of the Trust Agreements (Pet. Br. 4).  The CBA requires its signatory employers to pay periodic fringe benefit contributions to the Funds on behalf of their employees at rates set by the Union and the Funds.  (Pet. 56.1 ¶ 9).  The Funds also collect dues and contributions for the Union and its Political Action Committee (the "PAC"), which funds are voluntarily contributed by employees through their employers. (*Id.*).

The instant dispute arose from Respondent's failure to make certain contributions to the Funds that were required under the CBA, including contributions corresponding to work performed by Respondent's employees during the period from January 2, 2019, through December 31, 2020, as well as interest owed on late contributions actually made by Respondent during the period from June 1, 2017, through July 31, 2021.  (Pet. Br. 3-4; Pet. 56.1 ¶ 15).  Petitioners discovered Respondent's delinquency following an inspection of Respondent's books and records, to which inspection Respondent willingly submitted in accordance with its obligations under the CBA.  (Pet. Br. 4).

When Respondent failed to satisfy the Funds' request for payment of the delinquent contributions, the Funds served Respondent with a Notice of Arbitration by certified mail on May 13, 2022.  (Pet. Br. 4).  Under the terms of the Trusts Agreements, the Funds' Trustees have the power to demand, collect, and receive contributions from employers.  (Pet. 56.1 ¶ 11).  Further, the Trustees are authorized to take steps — including the initiation of arbitration proceedings — to collect on delinquent contributions.  (*Id.*).

Arbitrator Richard Adelman (the "Arbitrator") convened a hearing on June 14, 2022.  (Pet. Br. 3-4).  No representative appeared at the hearing on behalf of Respondent.  (*Id.* at 4).  In support of their claim, the Funds submitted the testimony and report of the auditor who examined Respondent's books and records, as well as the testimony and report of a delinquency manager regarding Respondent's failure to satisfy the Funds' demand for interest on late contributions, among other materials.  (*Id.* at 4-5).  Based upon

4

such evidence, as well as the record of the hearing, the Arbitrator found in favor of the Petitioners and issued the Award on June 21, 2022.  (*Id.* at 5).

Pursuant to the Award, Respondent was ordered to pay the Funds a total of $82,793.35.  (Pet. Br. 5).  The total encompasses $51,801.81 in delinquent contributions owed for the period from January 2, 2019, through December 31, 2020; $7,222.89 in interest on the delinquent contributions; $10,397.04 in interest on late contributions actually made during the period from June 1, 2017, through July 31, 2021; $3,601.20 in outstanding Union dues and PAC contributions; attorney arbitration fees of $500.00; and arbitration fees of $1,900.00.  (*Id.*).

## B.  Procedural Background

Petitioners commenced the instant action on June 16, 2023, by filing a Petition to Confirm and Enforce an Arbitration Award pursuant to Section 301(c) of the LMRA, 29 U.S.C. § 185 (the "Petition").  (Dkt. #1 at 1-2).  The Petition seeks to confirm and enforce the Award, which was issued in accordance with terms of the Trust Agreements to which Respondent is bound as a signatory to its CBA with the Union.  (*Id.*).

Because this Court treats proceedings to confirm an arbitration award as akin to a motion for summary judgment, on June 21, 2023, this Court ordered Petitioners to move for confirmation of the Award in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Local Rules of United States District Courts for the Southern and Eastern Districts of New York.  (Dkt. #6; *see also D.H. Blair & Co., Inc.* v. *Gottdiener*, 462 F.3d 95, 109

(2d Cir. 2006)).  Accordingly, on August 2, 2023, Petitioners filed a

Memorandum of Law in Support of the Petition, as well as an accompanying

Rule 56.1 statement of material facts.  (Dkt. #8-12).  Pursuant to the Court's

June 21, 2023 Order, Respondent was to file any opposition to Petitioners'

motion on or before August 30, 2023.  (Dkt. #6).  To date, Respondent has

neither filed such opposition nor appeared in the instant action.

## DISCUSSION

**A.    Applicable Law**

**1.    Confirmation of Arbitration Awards**

In the Second Circuit, the confirmation of an arbitration award is

generally "a summary proceeding that merely makes what is already a final

arbitration award a judgment of the court."  *Florasynth, Inc.* v. *Pickholz*, 750

F.2d 171, 176 (2d Cir. 1984).  Accordingly, the Court's corresponding inquiry is

narrow in scope: the Court is obligated to confirm an arbitration award "if a

ground for the arbitrator's decision can be inferred from the facts of the case."

*D.H. Blair & Co.*, 462 F.3d at 110 (internal quotation marks omitted).  Indeed,

"[o]nly 'a barely colorable justification for the outcome reached' by the

arbitrators is necessary [for the court] to confirm [an] award."  *Id.* (quoting

*Landy Michaels Realty Corp.* v. *Loc. 32B-32J, Service Employees Int'l Union*, 954

F.2d 794, 797 (2d Cir. 1992)).

This is particularly true with respect to labor arbitration awards.

"Section 301 of the [LMRA] provides federal courts with jurisdiction over

petitions brought to confirm labor arbitration awards."  *Loc. 802, Associated*

*Musicians of Greater New York* v. *Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (citation omitted).  In the Second Circuit, it is "well established" that judicial review of a labor arbitration award is "narrowly circumscribed and highly deferential — indeed, among the most deferential in the law."  *Nat'l Football League Mgmt. Council* v. *Nat'l Football League Players Ass'n*, 820 F.3d 527, 532 (2d Cir. 2016).  The Court's task is "limited to determining whether the arbitration proceedings and award met the minimum legal standards established by the [LMRA]" — that is, that the arbitrator was "even arguably construing or applying the contract and acting within the scope of his authority" and did not "ignore the plain language of the contract."  *Id.* (quoting *United Paperworks Int'l Union* v. *Misco, Inc.*, 484 U.S. 29, 38 (1987)).

### 2.    Summary Judgment Under Federal Rule of Civil Procedure 56

Courts in the Second Circuit typically treat an unopposed motion to confirm an arbitration award as a motion for summary judgment.  *D.H. Blair & Co.*, 462 F.3d at 109.[2]  Accordingly, when faced with such a motion, a court must determine — drawing "all justifiable inferences" in favor of the nonmoving party, *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) — whether "no

---

[2]     *See also, e.g.*, *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund* v. *M & RR Constr. Corp.*, No. 22 Civ. 6467 (VSB) (SLC), 2022 WL 20652775, at *4 (S.D.N.Y. Nov. 17, 2022), *report and recommendation adopted*, 2023 WL 5957120 (S.D.N.Y. Sept. 13, 2023); *Bishop* v. *Dalton Kent Sec. Grp., Inc.*, No. 21 Civ. 8957 (PAC) (SLC), 2022 WL 2307089, at *3 (S.D.N.Y. June 6, 2022), *report and recommendation adopted*, 2022 WL 2307742 (S.D.N.Y. June 27, 2022); *Neshgold LP* v. *N.Y. Hotel & Motel Trades Counsel, AFL-CIO*, No. 13 Civ. 2399 (KPF), 2013 WL 5298332, at *7 (S.D.N.Y. Sept. 19, 2013).

genuine dispute [of] any material fact" exists as to the legitimacy of the subject arbitration award and "the movant is entitled to judgment as a matter of law" in accordance with Federal Rule of Civil Procedure 56(a).  Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and is genuinely disputed "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Importantly, where (as here) a motion for summary judgment is unopposed, summary judgment may still be denied "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production."  *Vt. Teddy Bear Co., Inc.* v. *1-800 BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  Further, in determining whether an unchallenged movant has met its burden, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement."  *Id.*  Rather, the court must "be satisfied that the citation to evidence in the record supports the [movant's] assertion."  *Id.*

## B.    Analysis

The Court finds that no triable issue of material fact exists as to the Award's validity.  The evidence submitted by Petitioners in support of their motion for summary judgment includes:

- The CBA, which establishes that Union employers must make fringe benefit contributions for all covered employees at the rates set forth by the Union and the Funds, as well as contributions to the Union and its PAC, and that such employers are bound by any modification to the contribution rates made during the term of the agreement (Savci Decl. 23-29 (Ex. 2); *see,*

e.g., *id.* at 24 ("[T]he Employer shall pay weekly to [one of the Funds] $3.25 per hour for all hours worked by [Union Members][.]"); *id.* at 25 ("The Employer agrees to deduct and transmit to the [Union's PAC] $0.10 ... for each hour worked from the wages of those employees who have voluntarily authorized such contributions[.]"));

- Excerpts from the Trust Agreements, which affirm the fact that the Funds have the power to demand, collect, and receive contributions from Respondent pursuant to the CBA; the power to institute arbitration proceedings in the event of Respondent's delinquency; and the power to collect, *inter alia*, all attorneys' fees and costs in actions for unpaid contributions (Savci Decl. 37-40 (Ex. 3); *see, e.g., id.* at 38 ("The Board may proceed at law and/or in equity to enforce the payment of contributions due [in accordance with the Trust Agreements][.]"); *id.* at 39 ("The Board also has the right, in its sole and absolute discretion, to determine whether to initiate arbitration proceedings against a delinquent Employer (in lieu of pursuing any other remedies or legal action)[.]"));

- The report of an independent auditor, Schultheis & Panerttieri LLP, that conducted the audit of Respondent's books and records in accordance with the CBA and determined that there were deficiencies in Respondent's contributions to the Funds, including a deficiency of $51,801.81 in Respondent's benefit contributions and $3,601.20 in Respondent's Union dues and PAC contributions (Savci Decl. 68-83 (Ex. 7); *see, e.g., id.* at 66 ("A deficiency totaling $55,403.01 was [identified] . . . [among] [b]enefits . . . reported under Ideal Interiors, Inc. for individuals who received wages from Ideal Interiors Group LLC."));

- A Notice of Intention to Arbitrate, which confirms that Petitioners warned Respondent about the delinquent contributions due to the Funds, as well as Petitioners' intent to arbitrate the issue (Savci Decl. 59 (Ex. 6)); and

- The Award itself, which indicates that the Arbitrator considered "the evidence submitted by the [Funds]," — including both the CBA and the auditor's report, *inter*

*alia* — "and the arguments the [Funds] made [at the hearing]" in rendering his decision on the Award (Savci Decl. 10 (Ex. 1)).

The Court concludes that the evidence presented by Petitioners is sufficient to "support[] the[ir] assertion" that the Award is justified. *Vt. Teddy Bear Co., Inc.*, 373 F.3d at 244. In other words, the Court cannot conclude that the Arbitrator — in rendering the Award — "ignore[d] the plain language of the [CBA]" or failed to "even arguably constru[e] or appl[y] the [CBA] and ac[t] within the scope of his authority." *Nat'l Football League Mgmt. Council*, 820 F.3d at 537 (quoting *Misco, Inc.*, 484 U.S. at 38). Indeed, the Arbitrator's conclusion that Respondent "violated the [CBA] by failing to pay the fringe benefits due the [Funds], and the dues and PAC contributions, as required by the [CBA]" is the logical outcome of the above sequence of records provided by Petitioners. (Savci Decl. 11 (Ex. 1)). Accordingly, the Court finds that the arbitrator's interpretation of the CBA is a great deal more than just "barely colorable, which, again, is all that the law requires." *Nat'l Football League Mgmt. Council*, 820 F.3d at 539 (internal quotations omitted).

Although not essential to the foregoing conclusion, the Court also notes that no grounds exist for setting aside the Award in this case. None of the statutory grounds for vacatur applies: the record does not indicate that (i) Petitioners acquired the Award via corruption, fraud, or undue means; (ii) the Arbitrator was unfairly biased; (iii) the Arbitrator engaged in misconduct or prejudicial behavior; or (iv) the Arbitrator acted beyond the explicit scope of his powers. *See* 9 U.S.C. § 10(a) (providing the four statutory grounds for

vacatur of an arbitral award).  Additionally, none of the evidence demonstrates a "manifest disregard of the law" by the Arbitrator.  *Porzig* v. *Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 139 (2d Cir. 2007).

## CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is GRANTED as follows:  The Clerk of Court is directed to enter judgment in favor of Petitioners in the amount of $82,793.35, the outstanding balance due under the Award.  Post-judgment interest will accrue at the statutory rate pursuant to 28 U.S.C. § 1961.[3]

The Clerk of Court is further directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     October 24, 2023
           New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

---

[3]     "Awards of post-judgment interest under § 1961 … apply to actions to confirm arbitration awards."  *Trs. for the Mason Tenders Dist. Council Welfare Fund* v. *Euston St. Servs., Inc.*, No. 15 Civ. 6628 (GHW), 2016 WL 67730, at *2 (S.D.N.Y. Jan. 5, 2016) (citing *Westinghouse Credit Corp.* v. *D'Urso*, 371 F.3d 96, 100-01 (2d Cir. 2004) (awarding post-judgment interest in action to confirm arbitration award) ("There is no question but that the post-judgment interest awarded in this case was mandatory under § 1961.")).